STATE OF MAINE                                    SUPERIOR COURT
KENNEBEC, ss                                      CIVIL ACTION
                                                  DOCKET NO. RE-09-107
                                                  _N/M - KEN - 11/10/2010_


WILLIAM PENFOLD,

        Plaintiff
                                                  ORDER ON MOTION FOR
        v.                                        SUMMARY JUDGMENT

PEACE PIPE SHORE ROAD
OWNERS' ASSOCIATION et al.,

        Defendants


        This matter is before the court on defendant Peace Pipe Shore Road Owners'

Association (Peace Pipe)'s motion for summary judgment. Peace Pipe argues that the

plaintiff cannot hold Peace Pipe liable for any damage caused by water runoff resulting

from Peace Pipe's road repair work because of a waiver of liability provision in the

plaintiff's deed. The plaintiff, William Penfold, counters that the deed provision waives

only claims arising from repairs undertaken upon the road itself, and alleges that part

of the repair work that caused damage to him was undertaken upon his private land,

rather than upon the common roadway. For the following reasons, the motion is

denied.[1]

FACTS

        In the summer of 2008, Peace Pipe hired a contractor to perform culvert and

drainage work on Peace Pipe roads, including on a roadway abutting the plaintiff's

property, in connection with a grant and construction planning from the Kennebec

County Soil and Water Conservation District. (Def.'s S.M.F. ¶¶ 6-8; Pl.'s Opp. S.M.F. ¶¶

---

[1] Because the parties' arguments on summary judgment are limited to the effect of the deed's language, the court similarly limits its analysis and does not address the substance of the plaintiff's claims.

1

6-8.) This work was performed because, in the opinion of Peace Pipe, it was necessary and useful for the beneficial use of Peace Pipe roads, streets, avenues, and ways, which had been subject to erosion and puddling. (Def.'s S.M.F. ¶ 9; Pl.'s Opp. S.M.F. ¶ 9.)

The plaintiff has raised an issue of fact regarding whether the work included excavation upon his property, and whether the road culvert extended onto his property. (Pl.'s Opp. S.M.F. ¶12, Penfold Aff. ¶¶ 2, 3.) When the plaintiff arrived at his camp in the spring of 2009, he noticed an eighteen-inch wide stream of water flowing under his camp. (Def.'s S.M.F. ¶ 11; Pl.'s Opp. S.M.F. ¶ 11.) He traced the water flow back to a set of culverts that had been installed during the 2008 road work. (Def.'s S.M.F. ¶ 12, *as qualified by* Pl.'s Opp. S.M.F. ¶ 12; Penfold Dep. at 19:1-2 [referring to "the culvert"].) The plaintiff noticed that the concrete supports of his camp had moved and were leaning. (Def.'s S.M.F. ¶ 11; Pl.'s Opp. S.M.F. ¶ 11.) The drainage of water onto the plaintiff's property continued throughout the balance of 2009, causing serious structural damage to the plaintiff's property. (Def.'s S.M.F. ¶ 13, Penfold Dep. at 35:17-36:6.)[2] According to the plaintiff, the camp is no longer safe to stay in due to the structural damage. (Def.'s S.M.F. ¶ 14; Pl.'s Opp. S.M.F. ¶ 14; Penfold Dep. at 36:7-36:10.)

On December 10, 2009, the plaintiff filed a three-count complaint, in which he alleged trespass, diversion of surface water, and negligence. On August 2, 2010, Peace Pipe moved for summary judgment on the basis that the plaintiff's deed prohibited his recovery for any damage to his property resulting from roadway construction that was, in the view of Peace Pipe, necessary or advantageous.

The original deed from the grantor, Parker Lake Shores, Inc., to Raymond W. Penfold, Sr. and Helene D. Penfold was signed June 30, 1962 and recorded at the

---

[2] The plaintiff did not respond to paragraph 13 of Peace Pipe's statement of material facts.

Kennebec County [Registry] Of Deeds, Book 1348, page 8, and provided in pertinent part:

> The grantor for itself, its successors and assigns, hereby reserves the right without further assent or permit from the grantees or their successors in title, to itself or to grant to any public utility company, municipality, or water company, the right to erect and lay or cause or permit to be erected, laid, maintained, removed or repaired in all roads, streets, avenues or ways on which said above premises described abuts, . . . water, sewer and gas pipes and conduits, catch basins, surface drains, and such other customary or usual appurtenances, as may from time to time, in the opinion of the grantor or any public utility company, water company or municipality, be deemed necessary or useful in connection with the beneficial use of said roads, streets, avenues and ways as shown on the [Peace Pipe Shores Plot Plan] and only in and on said land previously described when necessary to effectuate any of the foregoing purposes and all claims for damages, if any by the construction, maintenance and repair thereof or on account of temporary or other inconvenience caused thereby against the grantor or any public utility company, or municipality, or any of its agents or servants are hereby waived by the grantees for themselves and their successors in title.

(Def.'s S.M.F. ¶ 2 & Ex. 1; Pl.'s Opp. S.M.F. ¶ 2.)[3] The plaintiff acquired the parcel by a deed from Raymond W. Penfold, Jr. and Patricia Penfold, signed June 28, 2002, and incorporating in the attached description of the property that it is "subject to all rights and restrictions as described in deed from Parker Lake Shores, Inc. to Raymond W. Penfold, Sr. and Helene D. Penfold dated June 30, 1982 and recorded in the Kennebec County Registry of Deeds in Book 1348, Page 8." (Def.'s S.M.F. ¶¶ 3-5 & Ex. 2; Pl.'s Opp. S.M.F. ¶¶ 3-5.)

---

[3] The deed also provides:
> Reserving unto the grantor, its successors, assigns, agents, employees or any person duly authorized by the grantor, the right to enter upon these granted premises at all reasonable times for the express purpose of repairing, replacing and maintaining water pipes, drain pipes and septic tanks and all appurtenances thereto.

(Def.'s S.M.F. ¶ 2 & Ex. 1.) Because reference to this language was not included in the Peace Pipe's statement of material facts, it is not part of the summary judgment record, and not properly before the court. See M.R. Civ. P. 56(h)(1); Levine v. R.B.K. Caly Corp., 2001 ME 77, ¶¶ 4, 5, 770 A.2d 653, 655.

STANDARD OF REVIEW

Summary judgment is appropriate when the court's review of the parties' statements of material fact and cited record evidence indicates there are no genuine issues of disputed material fact and that the moving party is entitled to judgment as a matter of law. Dyer v. Dep't. of Transportation, 2008 ME 106, ¶ 14, 951 A.2d 821, 825. A fact is material if it can affect the outcome of the case. Id. An issue of fact is genuine if "there is sufficient evidence to require a fact-finder to choose between competing versions of the truth at trial." Inkel v. Livingston, 2005 ME 42, ¶ 4, 869 A.2d 745, 747.

"Although no longer an extreme remedy, summary judgment is 'not a substitute for trial.'" Cookson v. Brewer School Dep't, 2009 ME 57, ¶ 12, 974 A.2d 276, 280 (quoting Arrow Fastener Co. v. Wrabacon, Inc., 2007 ME 34, ¶ 18, 917 A.2d 123, 127). "Thus, 'even when one party's version of the facts appears more credible and persuasive to the court, a summary judgment is inappropriate if a genuine factual dispute exists that is material to the outcome,' in which case 'the dispute must be resolved through fact-finding,' regardless of the nonmoving party's likelihood of success." Id. (quoting Arrow Fastener Co., 2007 ME 34, ¶ 17, 917 A.2d at 126-27). The nonmoving party may not rely on "conclusory allegations, improbable inferences, and unsupported speculation" to oppose summary judgment. Dyer, 2008 ME 106, ¶ 14, 951 A.2d at 825 (quoting Vives v. Fajardo, 472 F.3d 19, 21 (1st Cir. 2007)). "A court may properly enter a summary judgment in a case when the parties are not in dispute over the facts, but differ only as to the legal conclusions to be drawn from those facts." Tondreau v. Sherwin-Williams Co., 638 A.2d 728, 730 (Me. 1994) (citing Chadwick-BaRoss, Inc. v. T. Buck Constr., Inc., 627 A.2d 532, 534 (Me. 1993)).

4

ANALYSIS

Construction of a deed is a question of law. Silsby v. Belch, 2008 ME 104, ¶ 7, 952 A.2d 218, 221. "The relevant language will be given its ordinary meaning and this meaning governs unless there is ambiguity present." Id.; see also Pettee v. Young, 2001 ME 156, ¶ 8, 783 A.2d 637, 640 ("A court construing the language in a deed must give the words their general and ordinary meaning, and must first attempt to construe the language of the deed by looking only within the four corners of the instrument." (quotations and citations omitted)).

Peace Pipe advances two arguments as to why the disputed provision entitles it to summary judgment. First, Peace Pipe suggests that, while the plaintiff may have alleged potentially compensable damage from excavation occurring on his property, he cannot prevail on Peace Pipe's motion for summary judgment because he did not distinguish this damage from the noncompensable damage resulting from the roadway excavation.[4] (Def. Rep. to Pl.'s Opp'n to Def.'s Mot. Sum. J. 2-5.) Second, Peace Pipe contends that the deed's provisions preclude the plaintiff's recovery for any damage resulting from road repair, regardless of whether the challenged excavation occurred on the plaintiff's private property or the roadway. (Def. Rep. to Pl.'s Opp'n to Def.'s Mot. Sum. J. 5.) Because the second argument is a pure issue of law, specifically, of deed interpretation, the court will address it first.

Deed

The defendant argues that the plaintiff's predecessor waived recovery of any and all damages resulting from construction, maintenance, or repair of the roadway, regardless of the location of the excavation, and cites three cases in support of this interpretation of the deed: White County v. Wooten, 132 S.E.2d 653, 657 (Ga. 1963);

_____

[4] This argument was first raised in Peace Pipe's reply memorandum.

5

Wheeler v. Jones County, 113 S.E.2d 238, 240 (Ga. Ct. App. 1960); and McCommons v. Greene County, 184 S.E. 897, 899 (Ga. Ct. App. 1936). The language of the deed does not support this interpretation, and the cases cited in fact support the court's determination that the waiver provision is insufficient to rule out the plaintiff's claims at the summary judgment stage of proceedings. All three Georgia cases concerned plaintiffs who were grantors, and thus had greater control over the language of their deeds than the plaintiff here, who took by succession from a grantee subject to reservations in the original deed. See White County, 132 S.E.2d at 654; Wheeler, 113 S.E.2d at 239; McCommons, 184 S.E. at 897. Moreover, all three deeds at issue in the Georgia cases provided:

> I do further grant the right to all necessary drainage in the construction and maintenance of said road constructed over the[5] said right of way and on my lands adjacent thereto, and also release said County[6] and State Highway Board[7] from any claim of damage[8] arising on account of construction of[9] said roads or fills and[10] embankments, ditches or culverts or bridges, on account of back water, changing of courses of streams, or in any other manner.

White County, 132 S.E.2d at 654-55; Wheeler, 113 S.E.2d at 239; McCommons, 184 S.E. at 897. The Wheeler court interpreted this language as a three-fold "release by the grantor to the defendant and the State Highway Department for damages arising (1) on account of construction of roads, fills, etc., (2) on account of water backing up or changing its course, and (3) 'in any other manner.'" Wheeler, 113 S.E.2d at 240. Because the damage in all three cases was caused by the water backup, recovery for which the grantor had

---

[5] The White County deed omits this "the." White County, 132 S.E.2d at 654.
[6] The White County and Wheeler deeds do not capitalize "county." White County, 132 S.E.2d at 654, Wheeler, 113 S.E.2d at 239.
[7] The White County and Wheeler deeds refer to "Department" and not "Board." White County, 132 S.E.2d at 654; Wheeler, 113 S.E.2d at 239.
[8] The White County deed refers to "claims or damages." White County, 132 S.E.2d at 654.
[9] The White County deed omits the phrase "construction of." Id.
[10] The White County deed states "or" and not "and." White County, 132 S.E.2d at 654.

6

expressly disallowed in the deed's language, the courts interpreted these provisions as preventing recovery. White County, 132 S.E.2d at 655, 657; Wheeler, 113 S.E.2d at 237; McCommons, 184 S.E. at 897, 175.

In this case, the relevant deed provision includes a waiver of damages from "construction, maintenance and repair" of the relevant roadways. (Def.'s S.M.F. ¶ 2 & Ex. 1.) The deed does not refer to "water backing up or changing its course," as the deeds in the Georgia cases did. See Wheeler, 113 S.E.2d at 240. This deed does not grant permission for necessary drainage from construction and maintenance of the road to spread to adjacent lands.

This deed's reference to "land previously described" in connection with "the beneficial use of said roads, streets, avenues and ways," means the land being used as roads, streets, avenues and ways. This deed's reference to "said above premises described abuts" refers to the plaintiff's property. (Def.'s S.M.F. ¶ 2 & Ex. 1.) This deed specifically limits the described activities to the roadway areas by providing that such activities may occur and damages are waived "only in and on said land previously described," i.e., the roads, streets, avenues and ways. Id. If the deed waived rights generally, including those to involving private property, as Peace Pipe argues, it would be unnecessary to specify that construction could occur "only" on any specified area. The court concludes that the deed reflects the parties' intent to permit necessary and useful activities upon the roads, streets, avenues and ways themselves, and to waive damages resulting therefrom.

Damages

Peace Pipe also argues that it is entitled to summary judgment because the plaintiff has not distinguished in his summary judgment pleadings the damage resulting from the work performed upon the roadway from the damage resulting from

7

work performed upon the plaintiff's private property. The plaintiff has raised a genuine issue of material fact regarding whether the excavation work included excavation upon the plaintiff's private property, as well as a culvert extending from the roadway onto the plaintiff's private property. (Pl.'s Opp. S.M.F. ¶¶ 10, 12, 16.) Citing Mahar v. Stonewood Transport, the defendant contends that "[w]hen a cause of action is based on the totality of conduct and the total damages resulting from that conduct, the plaintiff has the burden to differentiate damages for events for which there is no liability from damages for which there is liability, or forfeit the entire claim," and summary judgment is the appropriate result in such a case. (Def. Rep. to Pl.'s Opp'n to Def.'s Mot. Sum. J. 4.); see Mahar v. Stonewood Transp., 2003 ME 63, 823 A.2d 540.

In Mahar, the Law Court entered summary judgment in favor of a corporate defendant on the plaintiffs' claim of negligent supervision of the corporate defendant's independent contractor or employee.[11] Id. at ¶ 11, 823 A.2d at 543. The record contained two tortious incidents involving the contractor/employee; one "might" have been foreseeable to the corporate defendant based on prior actions of the contractor/employee, but the other was not foreseeable. The plaintiffs based their cause of action on both incidents and the total damages resulting from the incidents. They did not attempt to separate the incidents. Id.

The Mahar court cited Barter v. Boothbay/Boothbay Harbor Community School District for the general proposition that "a plaintiff seeking legal relief must plead all theories of recovery then available to him." Barter, 564 A.2d 766, 768 (Me. 1989). Barter, in turn, is a res judicata case, which provides in part:

> [A] plaintiff seeking legal relief must plead all theories of recovery then available to him; he cannot splinter his claim and litigate it separately in a

[11] "Maine has not yet recognized the independent tort of negligent supervision of an employee." Mahar, 2003 ME 63, ¶ 10, 823 A.2d 540, 543.

piecemeal fashion by asserting in a subsequent lawsuit other grounds of recovery for the same claim when he had a reasonable opportunity to raise and litigate the same grounds in the former action.

On this record, the plaintiff was not required to differentiate the damages. None of Peace Pipe's statements of material fact addresses specifically the issue of delineation of damage amounts based on causation. (See, e.g., Def.'s S.M.F. ¶¶ 15, 16; Pl.'s Opp. S.M.F. ¶¶ 15, 16.). The relative amounts of damages attributable to the potentially compensable private property excavation and to the noncompensable roadway excavation represent an issue of fact for trial.

The entry is

> Defendant Peace Pipe Shore Road Owners' Association's
> Motion for Summary Judgment is DENIED.

Date:  November 10, 2010

Nancy Mills
Justice, Superior Court

9